No. 88-323

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

ROGER KOOPMAN, d/b/a CAREER CONCEPTS,

       Plaintiff and Appellant,

  -vs-

PATRICIA RAGGETT,

       Defendant, Respondent and Cross-Appellant.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        White & Seel; Karl P. Seel, Bozeman, Montana

    For Respondent:

        Landoe, Brown, Planalp & Kommers; James M. Kommers,
Bozeman, Montana

_____

Submitted on Briefs:  Nov. 17, 1988

Decided:  January 10, 1989

Filed:

ED SMITH
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The District Court of the Eighteenth Judicial District, Gallatin County, granted judgment after bench trial in favor of Roger Koopman, d/b/a Career Concepts, and against Patricia Baggett on Koopman's claim based on an employment agency contract, but the District Court denied Koopman's claim for attorney's fees and costs. Koopman appealed to this Court from the denial of attorney's fees and costs, and Patricia Baggett cross-appealed from the judgment of the District Court that she was liable for an employment fee under the employment agency contract. We reverse the District Court's determination that Koopman was entitled to an employment fee, affirm the denial of attorney's fees and costs to Koopman, direct that attorney's fees and costs be awarded to Patricia Baggett, and remand for that purpose.

The principal issue is whether Koopman, d/b/a Career Concepts, is entitled to a fee for employment agency services under the facts of this case.

Patricia Baggett moved to Montana from Georgia, with her husband, in November 1986. She entered into an applicant contract with Career Concepts on December 9, 1986. After entering into the written agreement with Career Concepts, Patricia Baggett also went to the Montana Job Service in Bozeman, Montana.

On January 13, 1987, Patricia Baggett heard on the radio about a job she might be interested in through a Job Service advertisement. She called the Job Service to inquire. She attended a seminar that afternoon conducted by the Job Service where she learned that the opening was with KBOZ, a local Bozeman radio station. The next morning, January 14, 1987, Patricia Baggett went to the Job Service office, where she obtained a referral card. At 9 o'clock a.m. of the same morning, Harvey Hasler of Career Concepts telephoned the defendant to inform her of the job opening at KBOZ.

At 11:30 a.m. of the same morning, Patricia Baggett telephoned KBOZ to set up an appointment. The KBOZ employee informed the defendant that Career Concepts had already called and set an interview for her at 4 o'clock that afternoon. At about noon, Baggett learned from her husband that Career Concepts had called about the 4 p.m. interview. At 3:30 p.m. in the afternoon the Career Concepts employee again called Baggett and they discussed the KBOZ interview. From conflicting testimony, the District Court found that Career Concepts had arranged for the interview for Patricia Baggett prior to the time that she called KBOZ.

After the 4 o'clock interview and a subsequent interview, Baggett accepted the position with KBOZ. When she refused to pay the fee under the contract, Koopman, d/b/a Career Concepts, sued her for the employment fee in the Justice Court in Gallatin County. Baggett cross-claimed for an amount of damages outside the jurisdiction of the Justice Court, and so the cause was removed to the District Court for a decision. There the District Court decided as we have set out above, from which this appeal has resulted.

The legal issue in this case swirls around language in the employment contract signed by Baggett and prepared and formulated by Koopman. The essence of the argument is whether the Job Service could be construed as an "employment agency" under the terms of the contract so as to preclude the collection of the employment fee by Career Concepts. The District Court, relying on the definitions in § 39-5-502, MCA, determined that the Job Service was not an "employment agency;" that Career Concepts had completed its contract; that thereby Career Concepts was entitled to the employment fee, but not to an award of attorney's fees and costs. Although the employment contract provided for attorney's fees and costs to the prevailing party, the court considered that

provision to be a penalty, and without sufficient notice being given to the person signing the employment contract that it was contained in the contract.

Free state employment services are conducted through the "Job Service" offices, as they are popularly called. The state employment offices exist because of the passage by Congress in 1933 of the United States Employment Act. (29 U.S.C.A., § 49 et seq.) Originally called the Wagner-Peyser Act, the United States Employment Service Act was intended to develop a national system of employment offices to assist persons in obtaining employment; its primary purpose is to connect an unemployed worker with a job. It is especially directed to migrant workers. See Frederick County Fruit Growers Association v. Marshall (1977 D.C. Virginia), 436 F.Supp. 218.

The Wagner-Peyser Act provides for federal monies to be appropriated for the purposes of the Act, and that in order to obtain the benefits of appropriations under the Act, a state shall, through its legislature, accept the provisions of the Act, and designate or authorize the creation of a state agency vested with all power necessary to cooperate with United States Employment Service Act. 29 U.S.C. § 49(c). Further, any state desiring to receive the benefits of the Act, must submit detailed plans for carrying out the provisions of the act within the state. 29 U.S.C., § 49(g).

The establishment of employment service offices through the several states did not come about by accident. In Ribnik v. McBride (1927), 277 U.S. 350, 48 S.Ct. 545, 72 L.Ed. 913 the United States Supreme Court heard a case involving New Jersey's Employment Agency Law. The law prohibited the charging of fees by private employment agencies over a certain amount, and in effect was considered by the Supreme Court to be price-fixing by the state. The Court invalidated

the law on the basis of due process under the Fourteenth Amendment. However a dissent in that case was written describing the evils of private employment agencies and suggested the creation of a federal system of public employment agencies.

The dissent in Ribnik echoes what was said by Justice Brandeis in Adams v. Tanner (1916), 244 U.S. 590, 37 S.Ct. 662, 61 L.Ed. 1336. There, the majority set aside a law of the state of Washington regulating employment agencies. Justice Brandeis castigated in his dissent the inequities and wrongful practices of private employment agencies at the time.

In creating the United States Employment Bureau, under the Act, in 1933, Congress set out the scope of the law in 29 U.S.C., § 49(b):

> It shall be the province and duty of the bureau to promote and develop a national system of employment offices for men, women and juniors who are legally qualified to engage in gainful occupations, including employment, counseling, and placement services for handicapped persons, to maintain a veterans service to be devoted to securing employment for veterans, to maintain a farm placement service, to maintain a public employment service for the District of Columbia, and assist and establish and maintaining systems of public employment offices in the several states. . . .

The state of Montana joined in the national effort, in 1937, when the legislature passed what is now § 39-51-307, MCA, requiring the Montana Department of Labor to "establish and maintain free public employment offices in such number and in such places as may be necessary for the proper administration of this chapter and for the purpose of performing such duties as are within the purview of the act of congress entitled [the Wagner-Peyser Act]."

In 1971, the legislature adopted "The Employment Agency Act" to regulate <u>private</u> employment agencies. Koopman, d/b/a Career Concepts, has qualified as a licensee under that Act. Career Concepts is an "employment agency" under the Act because its gross or net income is derived from fees received from applicants for offering, promising, procuring or attempting to procure employment for applicants. Section 39-5-102(1), MCA.

The Employment Agency Act also defines the term employment agency as follows:

> (c) The term "employment agency" does not include labor unions organizations, temporary service contractors, propriety schools, musical booking services, agents for professional athletes, or the <u>Montana State Employment Agency</u>. (Emphasis supplied.)

Section 39-5-102(1)(c), MCA.

Therein lies the nub of the controversy here.

The Employment Agency Act also provides for the payment of fees when an applicant is referred by two agencies.

> 39-5-310. <u>Payment of fee when applicant referred by two agencies.</u> When an applicant is referred to the same position by two employment agencies, the fee shall be paid to the agency that first contacted the applicant considering the specific opening, provided that such agency has given the name of the employer to the applicant and has arranged an interview or submitted a resume to the employer within ten days of such contact with the applicant.

The contract signed by Patricia Baggett with the employment agency, Career Concepts, included a paragraph which mirrors § 39-5-310, MCA. The contractual provision follows:

> 7. When an applicant is referred to the same position by two employment agencies, the fee shall be paid to the agency that first contacted the applicant concerning the specific opening, provided

that such agency has given the name of the employer to the applicant and has arranged an interview or submitted a resume to the employer within ten days of such contact with the applicant.

Koopman contends, and the District Court agreed, that since by definition under the Employment Agency Act, the Job Service Office acting as a Montana State Employment Agency, is not an "employment agency," that therefore the first reference to Baggett of this specific job by the Job Service is of no concern. In effect the District Court held that Career Concepts was the only "employment agency" under the Act which referred her to the job opening and therefore she must pay Career Concepts.

That interpretation of the term "employment agency" in the employment contract is wrong for two reasons: (1) The purpose of the definition of "employment agency" under Montana's Employment Agency Act is to define those private agencies that must be licensed and regulated by the Department of Labor. The Job Service Offices, established by an act of the legislature require no license; and (2) public policy requires the recognition of the Job Service as a full employment agency on which applicants for employment can rely.

A review of the federal and state statutes relating both to the Job Service Offices existing in Montana and private employment agencies shows that each of these exist for the same ultimate purpose, to connect an unemployed applicant with a job. It is the public policy of this state that the Job Service Offices shall exist side by side with any private employment agencies. Moreover, the Job Service agency is subsidized by the taxpayers as a free employment service which any citizen has the right to utilize. Therefore an interpretation of the employment contract which runs counter

to the purpose for the existence of the state employment service runs counter to the public policy of the state.

There is no question in this case that Koopman has insisted for quite some time that a Job Service referral is not a referral by an "employment agency" when the interpretation of his Career Concepts contract involves a collection of a fee where the Job Service office has also made a referral. On the basis of the contract, he has sued applicants in Justice Courts 112 times since 1983, and 12 times in the District Court. We do not know if all of those suits involved the precise interpretation of the contracts in relation to the facts here, but if they do, they cause an intolerable burden to be placed upon the court system in Gallatin County.

We therefore interpret the State Employment Agency Act to mean that the State Employment Offices (Job Service offices), which "procure or attempt to procure employment for applicants" are an "employment agency" even though they need not be licensed as an employment agency under the Employment Agency Act. Therefore, in construing Career Concepts' contract, a Job Service referral must be regarded as one by an employment agency.

When that is understood, the Career Concepts' contract can be properly interpreted.

To be entitled to a payment of a fee under § 39-5-310, supra, Career Concepts must qualify on two of three possibilities when an applicant is referred to the same position by two employment agencies: One, Career Concepts must be the agency that first contacted the applicant concerning the specific opening, and two, it must give the name of the employer to the applicant and arrange an interview, or three, submit a resume to the employer within 10 days of such contact with the applicant.

In this case, Career Concepts is not the agency that first contacted the applicant concerning the specific opening, since she first learned of it through the Job Service Office. Accordingly under the contract and the statute, Koopman, d/b/a Career Concepts, is not entitled to an employment applicant's fee.

The contract between Career Concepts and Patricia Baggett provides that Career Concepts, in the event of a breach of the agreement, is entitled to reasonable fees, costs, and expenses incurred including attorney's fees and court costs. Since it is not the prevailing party, in this case, Koopman, d/b/a Career Concepts, is not entitled to an attorney's fee, and his appeal must be denied. On the other hand, because of the reciprocity provisions of § 28-3-704, MCA, Baggett is entitled to attorney's fees and costs for which we remand for determination to the District Court.

We deny Baggett's request to return the cause for determination of punitive damages.

Accordingly, the judgment in favor of Koopman d/b/a Career Concepts and against Patricia Baggett is reversed; and the cause is remanded to the District Court for the determination of attorney's fees and costs in favor of Patricia Baggett.

_John C. Sheehy_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_L. C. Gulbrandson_

_R. C. McDonough_
Justices

- 9 -